GOLDSMITH ET AL. *v.* CITY OF INDIANAPOLIS ET AL.
[No. 26,283.   Filed June 25, 1935.]

*Merle N. A. Walker,* for appellants.

*Edward H. Knight, James E. Deery, H. Nathan Swaim,* and *A. J. Rucker,* for appellees.

FANSLER, J.—This is an appeal from an interlocutory order temporarily restraining the defendants from constructing a business building within 500 feet of property under the jurisdiction of the board of park commissioners of the city of Indianapolis. The procedure under which interlocutory orders are made does not contemplate motions for a new trial, and the statute providing for appeals from such orders contemplates only an exception to the order. The only error assigned which we need consider is that the court erred in granting the temporary injunction.

Appellant Goldsmith was the owner of certain lots located at the southeast corner of Neal avenue and West Washington street, in the city of Indianapolis, all lying within 500 feet of a public park which was under the jurisdiction of the board of park commissioners. Section 48-5508, Burns 1933, §11918, Baldwin's 1934, provides:

". . . Whenever it shall be considered neces-

sary by such board of park commissioners, in order
to promote public health, safety, morals or general
welfare, such board shall have the power, by gen-
eral order or resolution, to abate, restrict, forbid or
regulate any horse-racing, gambling, offensive or
dangerous business or amusement, and to regulate,
restrict and forbid the location of trades, industries
and commercial enterprises and the location of
buildings or 'devices,' designed for uses which, in
such order or resolution, are specified as injurious
to the public health, safety, morals or general wel-
fare, within five hundred (500) feet of any such
park, parkway or boulevard; and the right to re-
strict the use of such adjacent lands for any such
purposes shall be deemed to be included in any gift,
donation, acquisition or condemnation in this act
provided for. . . ."

In *General Outdoor Advertising Co.* v. *City of Indian-
apolis* (1930), 202 Ind. 85, 172 N. E. 309, 72 A. L. R.
453, it was held that this statute is within the
police power of the state, and that an order of
the park board prohibiting the construction of
bill boards within 500 feet of property under the juris-
diction of the board has a real and reasonable relation to
the public welfare, and does not violate constitutional
provisions for the protection of property. It is now
generally recognized that the character of business
which may be carried on and the type of building which
may be erected in given localities, have a direct relation-
ship to the public welfare; and zoning ordinances con-
fining legitimate enterprises to a restricted territory
are generally upheld by the courts, and must be treated
as a legitimate exercise of the police power.

Pursuant to the authority granted by the above quoted
statute, the board of park commissioners promulgated
an ordinance or order to the following effect:

"BE IT RESOLVED . . . that it is consid-
ered necessary . . . in order to promote pub-
lic health, safety, morals and general welfare, that
the Board shall require a permit . . . before

any building . . . to be used for . . . commercial use, which in this order may be declared to be injurious to the public health, safety, morals and general welfare, upon or within five hundred (500) feet of any park, parkway or boulevard under the control of the Board of Park Commissioners of the City of Indianapolis, either within the corporate limits of said city or beyond said limits, and within the area wherein said Board is granted jurisdiction by the statutes of the State of Indiana, shall be and is hereby specified and declared to be injurious to the public health, safety, morals and general welfare, and . . .,

"BE IT FURTHER RESOLVED, that any building intended to be used as a moving picture theatre or other amusement enterprise or for any commercial or business use whatsoever, upon or within five hundred (500) feet of any park, parkway or boulevard under the control of the Board of Park Commissioners of the City of Indianapolis, either within the corporate limits of said city or beyond said limits and within the area wherein said Board is granted jurisdiction by the statutes of the State of Indiana, shall be and is hereby specified and declared to be injurious to the public health, safety, morals and general welfare, and

"IT IS THEREFORE HEREBY ORDERED by the Board of Park Commissioners of the City of Indianapolis that thereafter no building, structure, device or commercial enterprise or for any business or commercial use whatsoever, or for an apartment house, flat or group of dwellings joined together, and providing for the housing of five families or more, shall be erected or located and used for amusement, business and housing purposes upon or within five hundred (500) feet of any park, parkway or boulevard under the control of the Board of Park Commissioners of the City of Indianapolis, either within the corporate limits of said city, or beyond said limits and within the area wherein said Board is granted jurisdiction by the statutes of the State of Indiana, unless a permit therefor and for such use shall have been first obtained from the Board of Park Commissioners of the City of Indianapolis."

The common council of the city of Indianapolis enacted, and at all times pertinent to our inquiry there was in force, a zoning ordinance under which the territory in which the lots in question are located is zoned for business purposes. Appellant Goldsmith applied to the controller of the city of Indianapolis for a permit to erect a business building for use as a retail shop for plumbing and heating supplies, and the permit was issued. He afterwards applied for a permit from the park board, which was refused. He then began excavating for the construction of his building. The board of park commissioners brought this action seeking to enjoin appellants from constructing the building, and, pending the final determination of the cause, the temporary restraining order appealed from was granted.

Appellants contend that the statute above quoted, conferring zoning powers upon the park board, was repealed by implication by sections 48-2201 et seq., Burns 1933, §11619 et seq., Baldwin's 1934, which provide for a city plan commission, and section 48-2206, Burns 1933, §11624, Baldwin's 1934, which provides for the zoning of cities by ordinance adopted by the common council. It is contended that, since the statutes referred to provide that a member of the park board shall serve as a member of the city plan commission and the board of zoning appeals, the park board has a voice in recommending zoning ordinances, and that from that fact it must be inferred that the Legislature intended that the park board should be bound by the zoning ordinances adopted by the common council, and that therefore, in so far as the zoning regulations adopted by the park board may conflict with the zoning ordinances of the city, they are void. But "repeals by implication are disfavored, and are never recognized in the absence of irreconcilable repugnancy." *Cleveland,*

*C. C. & St. L. R. Co.* v. *Blind* (1914), 182 Ind. 398, 105 N. E. 483. It may have been thought that, because of familiarity with existing parks, and plans for extensions thereof, or new developments, a member of the park board might be useful upon the city plan commission and the board of zoning appeals, and that the provision was made without any thought of limiting the powers of the park board. We find nothing expressed in the statute indicating an intention to restrict or limit the powers of the board. We do, however, find in section 48-2301, Burns 1933, §11654, Baldwin's 1934, the section of the statute which authorizes zoning by ordinance of the city council, this provision:

". . . Wherever the regulations provided under this act impose greater restrictions on the character or the intensity of the use of buildings or lands than are imposed under any other law of the State of Indiana, then the regulations established by virtue of this act shall prevail."

It follows that the provision of the zoning ordinance was not intended to prevail where the restrictions imposed are less than those imposed by other laws. The only other law which has come to our attention, authorizing restrictions upon the use of property for building purposes within cities, is the park board law. But whether or not there are other laws upon the subject, we find no basis for the conclusion that there was any intention to repeal the statute giving zoning power to the park board, and the act must be treated as still effective.

Appellant's contention that the park in question is used as a playground, and therefore is not a park, cannot be taken seriously, since all parks, playgrounds, boulevards, and recreational centers are expressly brought within the jurisdiction of the park board, and from the language of the statute it is

plain that the zoning powers granted the board were intended for the protection and betterment of all such properties.

It is contended that the order of the park board is void because of the provision which requires an application for a permit leaves the board with an arbitrary discretion to grant a permit to one person to conduct a certain business and to deny another person a permit to conduct a similar business. A similar question was presented to the Supreme Court of Massachusetts in *Inhabitants of Quincy* v. *Kennard* (1890), 151 Mass. 563, 24 N. E. 860. A statute similar to the one here in question authorized the board of health to assign certain places for the exercise of any trade or employment which was injurious to the public welfare, and to prohibit the exercise of such trades by persons not so assigned, or to forbid its exercise within the limits of the town or any particular locality therein. The board made an order under the statute forbidding the trade of keeping swine within the limits of the town "without a permit in writing first obtained from the board of health." It was contended that, by the provisions of the act, the board was bound to assign a place for the exercise of the employment of keeping swine or to absolutely prohibit the exercise of the trade or employment; that the board has not done so except upon a condition which the board was not authorized to make. In deciding the case, it was said by Justice Holmes, speaking for the court:

> "It is admitted that the board of health had authority to forbid the exercise of the employment of keeping swine in the town of Quincy. (Citing cases.) But it is argued that the order passed was invalid because the prohibition contained in it was qualified by the words 'without a permit in writing first obtained from the board of health.' We are at a loss to see how it affects the validity of the order,

that the board expressly reserved to themselves a power to do what they could have done even if the prohibition had been absolute, or how the defendants are put in a worse position by the order contemplating the possibility that the board of health may grant them a written permit than if it had excluded that possibility."

In *Fischer* v. *St. Louis* (1904), 194 U. S. 361, 24 S. Ct. Rep. 673, it is held that, when authorized by the state, a municipality has power to make a general police regulation subject to exceptions, and to vest discretion in granting the exceptions to a municipal board.

There was no error in issuing the restraining order. Judgment affirmed.